■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT TAYLOR, ARTHUR BARNES and ABDUL HAQQ, Also Known as ABDULLA AZIZ, Appellants.—Appeals (1) by the defendant Robert Taylor from a judgment of the County

Court, Orange County (Pano Patsalos, J.), rendered September 1, 1988, convicting him of criminal possession of a weapon in the third degree (six counts), upon a jury verdict, and imposing sentence, (2) by the defendant Abdul Haqq from a judgment of the same court, also rendered September 1, 1988, and convicting him of criminal possession of a weapon in the third degree (six counts), attempted escape in the second degree, and assault in the second degree, upon a jury verdict, and imposing sentence, and (3) by the defendant Arthur Barnes from a judgment of the same court, rendered August 4, 1988, convicting him of criminal possession of a weapon in the third degree (four counts), and attempted escape in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgments are affirmed; and it is further,

Ordered that, with respect to the defendant Barnes, the matter is remitted to the County Court, Orange County, for further proceedings pursuant to CPL 460.50 (5).

The defendants were all charged with and tried together for, *inter alia*, criminal possession of a weapon in the third degree, after the car Taylor was driving, and in which the two codefendants were passengers, was stopped by the State Police for speeding and two revolvers were found in the car. All three defendants were found guilty of weapons possession charges. The defendants Barnes and Haqq were also convicted of attempted escape in the second degree because the set of handcuffs which had secured their right wrists together were found to have been removed while they were being transported to the State Trooper barracks, and a key which fit the handcuffs was found in Barnes's sock. The defendant Haqq was additionally found guilty of assault in the second degree for having attacked a State Trooper while being fingerprinted.

A review of the record reveals that on June 2, 1988, about 10 months after they were arraigned, all three defendants appeared in court, separately represented by retained counsel. However, after a recess, when court reconvened to commence jury selection, all three defense attorneys were absent, having left the courthouse because, according to the defendant Taylor, "they could not participate in this trial".

At the next scheduled court appearance, June 16, 1988, the retained attorneys again failed to be present, notwithstanding the fact that they had been contacted by the court and told to appear. Upon the court's inquiry, the defendants stated that they did not wish to proceed *pro se*. The court thereupon assigned attorneys to the defendants and permitted the par-

ties and their assigned counsel to confer together in order to ascertain what preparation would be necessary for the newly assigned attorneys and so that the attorneys could inform the court the length of adjournment required. However, after these attorney-client meetings were concluded, it was learned that the defendants were refusing to cooperate with the assigned counsel and each had indicated that he already had an attorney and did not want his assigned counsel to represent him. Thus, the court permitted these attorneys to withdraw as assigned counsel but then assigned three attorneys to serve as "legal advisors" to the defendants. The court advised the defendants that jury selection was to commence in the afternoon on June 20, 1988, and that they should be sure to have their retained attorneys present in court on that day or to secure other counsel who would be present.

On June 20, 1988, the defendants' retained attorneys again failed to appear in court. The defendant Taylor indicated that he had not requested his attorney to come to court that day. The defendant Haqq informed the court that he had not spoken with his defense attorney within the previous 72 hours, but indicated that that attorney was still representing him. Haqq also stated that he did not recognize the "legitimacy of the court". Lastly, the defendant Barnes also told the court that his retained attorney was still his attorney.

The court, noting the adjournments which had taken place and the various occasions on which the retained attorneys had failed to appear in court, stated that it would proceed with jury selection and reminded the defendants that the assigned legal advisors were present and available to assist them. Thus, jury selection and, thereafter, the trial, proceeded in the absence of the retained attorneys.

On this appeal all three defendants contend, among other things, that in proceeding to jury selection in the absence of counsel, although they did have legal advisors, the court deprived them of their right to counsel. Moreover, they argue that the court should have further adjourned the proceedings in order to permit them time to retain new counsel. Under the circumstances of the instant case, this position is untenable.

In *People v Arroyave* (49 NY2d 264), the Court of Appeals observed that "[w]hether a continuance should be granted is largely within the discretion of the Trial Judge * * * and the question of whether a defendant has been denied his right to retain counsel of his own choosing can only be answered by examining the particular facts of each case" *(People v Arroyave, supra,* at 271). Moreover, "[a]lthough a defendant has the

constitutionally guaranteed right to be defended by counsel of his own choosing, this right is qualified in the sense that a defendant may not employ such right as a means to delay judicial proceedings" *(People v Arroyave, supra,* at 271). With respect to requests for adjournments made on the eve of trial to grant the defendants an opportunity to substitute counsel, "it is incumbent upon the defendant to demonstrate that the requested adjournment has been necessitated by *forces beyond his control* and is not simply a dilatory tactic" *(People v Arroyave, supra,* at 271-272 [emphasis added]).

Applying these principles to the matter sub judice, we find that the trial court did not err in denying the defendants' requests for further adjournments. It is apparent from the record herein that the defendants had more than ample opportunity to obtain replacement counsel had they so desired, assuming, arguendo, they did not acquiesce in the improper behavior of their attorneys.

Insofar as the defendants failed to discharge their retained counsel and hire new counsel or accept appointed counsel, we must conclude that they forfeited their right to counsel *(see,* 2 La Fave and Israel, Criminal Procedure § 11.3 [c], at 33-34; *see also, People v Arroyave, supra).*

The defendants also contend that their convictions should be reversed because they were denied the effective assistance of counsel owing to the omissions of their retained attorneys, particularly those attorneys' failure to make timely suppression applications. However, the record strongly suggests that the defendants either instructed their retained counsel to refrain from participating in the proceedings, or consented to nonparticipation, in an attempt to manufacture a right to counsel issue. Such a strategy cannot be countenanced *(see, e.g., People v Sharpton,* 146 Misc 2d 684).

It appears from the record, however, that the attorneys' failure to request pretrial suppression hearings was just another aspect of counsel's over-all strategy to deliberately seek a mistrial or attempt to create reversible error, and, moreover, the defendants have failed to demonstrate "the absence of strategic or other legitimate explanations for counsel's failure to request [suppression hearings]" *(People v Rivera,* 71 NY2d 705, 709).

Having concluded that the acts of the defendants' attorneys in failing to follow the proper procedures for the making of pretrial suppression applications and further, in willfully absenting themselves from court during the course of the

proceedings, was part of a strategy calculated to create error, this court cannot "permit [the defendants] to succeed on appeal by raising as evidence of counsel's ineffectiveness the very stratagem with which counsel sought and failed to abort the trial" *(People v Wise,* 64 AD2d 272, 277, citing *People v Aiken,* 45 NY2d 394, 399; *see also, People v Sullivan,* 153 AD2d 223, 228).

Our conclusion that the defendants concurred in the actions of their respective attorneys is further evidenced by the defendants' refusal to replace their attorneys when given the opportunity to do so by the court, which attempted to assign new counsel to the defendants and offered assigned counsel adjournments to prepare their defense cases.

We have considered the defendants' remaining contentions and find them to be without merit. Kunzeman, J. P., Kooper, Sullivan and O'Brien, JJ., concur.